UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY LAMONT CHAMBERS, and
DONTELL RAYVON-EDDIE SMITH,

              Plaintiffs,

v.

RONALD SANDERS, and CITY OF
DETROIT,

              Defendants.

_____/

Case No. 21-cv-10746

Paul D. Borman
United States District Judge

**OPINION AND ORDER**
**(1) GRANTING DEFENDANTS RONALD SANDERS AND THE CITY OF**
**DETROIT'S JOINT MOTION TO DISMISS PLAINTIFFS' COUNT I –**
**42 U.S.C. § 1983 CLAIM (ECF NO. 21), AND**
**(2) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER**
**PLAINTIFFS' REMAINING STATE LAW CLAIM IN COUNT II**

This action arises out of Danny Burton's September 14, 1987 conviction for

First-Degree Murder and Felony Firearm associated with the death of Leonard

Ruffin. Burton was sentenced to life in prison without the possibility of parole, but

that conviction was subsequently vacated on December 6, 2019, due in large part to

recantation of multiple witnesses' trial testimony. On July 20, 2020, Burton brought

an action against Ronald Sanders, the City of Detroit, and the Detroit Police

1

Department pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. *Burton v. Chambers, et al.*, Case No. 20-cv-11948 (E.D. Mich.).

On April 1, 2021, Plaintiffs Danny Lamont Chambers and Dontell Rayvon-Eddie Smith, Burton's adult sons, brought this lawsuit against Defendants Ronald Sanders and the City of Detroit pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that the Defendants violated Plaintiffs' constitutional due process rights to familial association when Defendants allegedly caused the wrongful incarceration of Plaintiffs' father. Now before the Court is Defendants Ronald Sanders and the City of Detroit's Joint Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 21), which has been fully briefed. The Court held a hearing on Defendants' motion on Thursday, April 14, 2022.

For the reasons that follow, Defendants' Joint Motion to Dismiss is GRANTED with respect to Plaintiffs' 42 U.S.C. § 1983 claim in Count I of their Complaint against Defendants Sanders and the City of Detroit, and that claim is DISMISSED WITH PREJUDICE. The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' remaining state law intentional infliction of emotional distress claim in Count II, and that claim is DISMISSED WITHOUT PREJUDICE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Facts[1]

Danny Burton was convicted on September 14, 1987, "after a five-day jury trial in the Wayne County Circuit Court on a charge of first-degree Murder, MCL 750.316, and Felony Firearm, MCL 750.227(B), … and sentenced to life in prison without the possibility of parole" for the murder of Leonard Ruffin. (ECF No. 1, Complaint ¶¶ 9, 10.) According to Plaintiffs' Complaint, "[t]he case against Mr. Burton was built primarily upon witness statements of individuals who resided in or were present at the home where the shooting [of Mr. Ruffin] occurred," and "the key witnesses who testified at Mr. Burton's trial subsequently provided affidavits recanting their trial testimony and stating that they gave false statements at trial because of threats and intimidation by Defendant [Ronald] Sanders," a Detective with the Detroit Police Department. (*Id.* ¶¶ 6, 11-12.) Because of that, Mr. Burton's conviction was subsequently vacated on December 6, 2019. (*Id.* ¶ 13.)

On July 20, 2020, Burton brought an action in this Court against Ronald Sanders, the City of Detroit, and the Detroit Police Department, asserting that the Defendants violated his constitutional rights pursuant to 42 U.S.C. §§ 1983 and

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in Plaintiffs' Complaint as true. *See Erickson v. Pardus*, 551 U.S. 89. 94 (2007).

1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments. (Case No. 20-cv-11948 (E.D. Mich.), ECF No. 1, Complaint.) Burton asserted claims against Sanders for *Brady* violations, malicious prosecution, and fabrication of evidence, and against the City of Detroit and the Detroit Police Department for creating policies, practices and customs, including failure to provide adequate training to police officers, that violated Burton's constitutional rights based on fabrication and withholding of evidence, and the right not to be seized or detained without probable cause. (*Id.*)

On January 19, 2021, this Court granted the City of Detroit's motion to dismiss, holding that the Detroit Police Department is a municipal department of the City of Detroit and not a legal entity amendable to suit, and that Burton's claims against the City were discharged by the City's Chapter 9 bankruptcy and therefore barred. (Case No. 20-cv-11948 (E.D. Mich.), ECF No. 20.)

Less than three months later, on April 1, 2021, Plaintiffs Danny Lamont Chambers and Dontell Rayvon-Eddie Smith, Burton's adult sons, brought this lawsuit against Defendants Ronald Sanders and the City of Detroit pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of their constitutional due process rights to familial association based on the alleged wrongful incarceration of their father.

4

(Compl.)[2] Plaintiffs also allege a claim for intentional infliction of emotional distress.

Plaintiffs plead that, as a result of Defendants' "unconstitutional behavior" – namely, claims for *Brady* violations, malicious prosecution, and fabrication of evidence in the 1987 prosecution of Burton – "Plaintiffs were deprived of their rights as children of Danny Burton to have their family unit … to be protected and preserved." (Compl. ¶ 50, and Count I.) Plaintiffs allege that they "have the constitutional right to have their family unit protected by the Due Process Clause of the Constitution," and that their "rights were violated when defendants violated Mr. Burton's rights, which caused Mr. Burton to be falsely convicted and imprisoned." (*Id.* ¶¶ 49, 51.)

## B.    Procedural History

On December 17, 2021, Defendants Sanders and the City of Detroit filed their joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 21, Defs.' Mot.) Defendants first argue that Plaintiffs' federal claims are not cognizable under

---

[2] Plaintiffs' Complaint in this case is almost identical to the complaint filed in *Burton v. Sanders, et al.*, Case No. 19-cv-11948 (E.D. Mich.). Plaintiffs added a claim in their Complaint alleging that their due process rights to protection of their family unit were violated as a result of Defendants' alleged unconstitutional behavior toward Burton.

42 U.S.C. § 1983 because only the purported victim, or his estate's representative, may prosecute a section 1983 claim, and Plaintiffs here merely seek redress for the collateral effects of Burton's purportedly wrongful conviction. Defendants further argue that Sanders is entitled to qualified immunity for Plaintiffs' section 1983 allegations because there is no clearly established right to a claim for violation of the right to family integrity as a collateral injury in the context of this case, and that the claims against the City are barred and discharged by the City's Chapter 9 bankruptcy. Defendants contend that Plaintiffs fail to state a claim for intentional infliction of emotional distress claim under Michigan law, and that such a claim is barred by governmental immunity.

Plaintiffs filed a Response in opposition to Defendants' motion to dismiss. (ECF No. 25, Pls.' Resp.) Plaintiffs argue that the right to familial association has been recognized by the United States Supreme Court, and that Plaintiffs have properly asserted a claim for violation of that right. Plaintiffs contend that Defendant Sanders is not entitled to qualified immunity because the right to familial association is clearly established, and that Detroit's Chapter 9 bankruptcy does not provide immunity for Plaintiffs' claims because their claims did not accrue before the bankruptcy, and even if they did, Plaintiffs qualify for excusable neglect. Plaintiffs further argue that they state a claim for intentional infliction of emotional distress

against Defendant Sanders only, and not the City, and that Sanders is not entitled to governmental immunity.

Defendants filed a Reply brief in support of their motion. (ECF No. 26, Defs.' Reply.) Defendants contend, again, that Plaintiffs are seeking redress for the collateral effects of Burton's purportedly wrongful conviction, and fail to state a viable section 1983 claim, and that Sanders is entitled to qualified immunity because Plaintiffs' collateral due process claim was not clearly established in 1987. Defendants further contend that the City's bankruptcy bars Plaintiffs' derivative due process and intentional infliction of emotional distress claims, which are entirely dependent on the success of Burton's claims, which have been found to be barred, and that Plaintiffs' intentional infliction of emotional distress claim fails because it is based on conduct directed at a non-party and third person, Danny Burton, and there is no evidence of intent to cause harm to Plaintiffs.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and

7

conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is

the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are

referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

## III.  ANALYSIS

### A.    Plaintiffs' Federal Due Process Claim is Not Cognizable Under 42 U.S.C. § 1983

Plaintiffs allege in Count I of their Complaint that they "have the constitutional right to have their family unit protected by the Due Process Clause," and that their due process rights were violated by Defendants when Burton was convicted and incarcerated because Plaintiffs "were deprived of their rights as children of Danny Burton to have their family unit … protected and preserved." (Compl. ¶¶ 49-50.) Plaintiffs contend that their "rights were violated when defendants violated Mr. Burton's rights, which caused Mr. Burton to be falsely convicted and imprisoned." (*Id.* ¶ 51.)

Defendants argue that Plaintiffs' section 1983 claim fails because Plaintiffs are alleging a collateral constitutional violation and injury – that their rights were violated when defendants violated Burton's rights – and that it is well established that a section 1983 cause of action is a personal action cognizable only by the party whose civil rights have been violated. (Defs.' Mot. at pp. 5-8, PageID.120-23.) Plaintiffs argue in response that the right to familial association is a recognized right,

and that they have properly asserted a claim for violation of their right to protection of the family unit afforded by the due process clause of the Fourteenth Amendment based on the Defendants' alleged unconstitutional arrest, conviction and sentence of their father, Burton. (Pls.' Resp. at pp. 6-11, PageID.155-60.)

It is well established in this Circuit that "a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000); *see also Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984) ("The § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by a party whose civil rights have been violated[.]"); *see also LeFever v. Ferguson*, 645 F. App'x 438, 447-48 (6th Cir. 2016) (same); *Foos v. City of Delaware*, 492 F. App'x 582, 592-93 (6th Cir. 2012) (same). Therefore, "only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim," and "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357; *id.* at 358 (finding that the plaintiff/husband "lacks standing under § 1983 to claim compensation for any indirect injuries allegedly caused to him by reason of any constitutional tort suffered by his spouse Quintana Claybrook, irrespective of the potential merits of Quintana's personal

11

claims"). "Those kinds of injuries are appropriately raised in a state tort law cause of action." *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 615 (6th Cir. 2010).

Plaintiffs here argue that the United States Supreme Court has recognized the right to familial association and reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship. (Pls.' Resp. at pp. 6-7, PageID.155-56.) Plaintiffs allege in their Complaint that they are entitled to relief based upon Burton's constitutional claims against Defendants (*Brady* violation, malicious prosecution and fabrication of evidence) because Burton's asserted claims, if true, impacted their family unit. (Compl. ¶¶ 50-51 ("Plaintiffs' rights were violated when defendants violated Mr. Burton's rights, which caused Mr. Burton to be falsely convicted and imprisoned.").) Plaintiffs argue in their Response brief that *"[a]s a result* of Defendants' actions and inactions relating to the investigation, arrest, and prosecution *of Danny Burton*, Plaintiffs were deprived of a protected and preserved family unit and of the normal relationship children generally have with their father." (Pls.' Resp. at pp. 8-9, PageID.157-58 (emphases added).) Plaintiffs thus seek redress for the collateral effects of Burton's purportedly wrongful conviction.

The same argument Plaintiffs make here has been expressly rejected by the Sixth Circuit Court of Appeals, most recently in an unpublished opinion, *LeFever v.*

12

*Ferguson*, 645 F. App'x 438 (6th Cir. 2016). In that case, Virginia LeFever was convicted of murdering her ex-husband. More than 20 years later, she was granted a new trial, but the county declined to retry her and dismissed the underlying indictment. Virginia and her son Alex then separately brought suit against various county officials and the relevant municipalities under 42 U.S.C. § 1983. Like Plaintiffs here, Alex alleged that the defendants' "fabricated murder theories and failure to disclose exculpatory evidence violated [his] substantive due process right to familial integrity." *LeFever*, 645 F. App'x at 441-42. The Ohio district court granted defendants summary judgment on this claim, finding that any injury Alex experienced flowed from the constitutional violations suffered by his mother, and that Sixth Circuit precedent foreclosed section 1983 actions for harm suffered by others. *LeFever v. Ferguson*, Nos. 2:11-cv-935, 2:12-cv-664, 2013 WL 1324299, at *5-6 (S.D. Ohio Mar. 28, 2013).

The Sixth Circuit Court of Appeals affirmed the district court's ruling, stating that it has "repeatedly found that § 1983 provides no relief for injuries collateral to the violation of another person's constitutional right." *LeFever*, 645 F. App'x at 447-48 (citing *Claybrook*, *supra*; *Foos*, *supra*; *Purnell v. City of Akron*, 925 F.2d 941, 948 n.6 (6th Cir. 1991)). The Court stated that "[b]ecause Alex alleges that the defendants violated his right to familial integrity by trampling *his mother's*

13

constitutional rights leading to her wrongful conviction, he raises a non-cognizable claim for a collateral injury." *Id.* at 448 (emphasis in original).

The Sixth Circuit Court of Appeals had previously considered a similar claim in *Foos v. City of Delaware*, 492 F. App'x 582 (6th Cir. 2012). In that case, the plaintiffs, parents of a motorist who died during an altercation with city police officers, alleged, among other claims, a claim under section 1983 for "deprivation of familial relationships." *Id.* at 592-93. The Sixth Circuit affirmed the district court's grant of summary judgment to the defendants on this claim, citing the "well established" principle that "'a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.'" *Id.* (quoting *Claybrook*). The Sixth Circuit held that the parents could not invoke section 1983 to recover damages for the deprivation of their rights to "familial relationships," and repeated the rule that section 1983 does not provide a remedy "'for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.'" (*Id.* quoting *Claybrook*).

A number of district courts in the Sixth Circuit have found that the same principles set forth in *LeFever*, *Foos* and *Claybrook* dictate dismissal of collateral familial association claims. *See, e.g., Kellom v. Quinn*, No. 17-11084, 2018 WL 4111906, at *14-15 (E.D. Mich. Aug. 29, 2018) (granting motion to dismiss parents'

14

claim for deprivation of familial association because "the Sixth Circuit has not yet recognized a § 1983 claim for loss of the right to familial association when a child is killed by a state agent"); *Broadnax v. Webb*, 892 F. Supp. 188, 190 (E.D. Mich. 1995) (discussing *Purnell* and its progeny and finding that "a loss of companionship claim by the children of a parent who has suffered a constitutional deprivation is not cognizable under section 1983" because "any damage suffered by the parent's children is merely incidental, does not amount to an independent constitutional deprivation, and was not the intended result of the alleged wrongdoer's actions"); *Feucht v. Triad Local Schools Bd. of Educ.*, 425 F. Supp. 3d 914, 923 (S.D. Ohio 2019) (dismissing parents' substantive due process claim for deprivation of their right to familial association, based on school officials' purported failure to prevent bullying, harassment, and discrimination against their child, causing her death by suicide, because "[s]uch a claim is not recognized in the Sixth Circuit"); *Weedman v. Johnson*, No. 3:19-CV-80-CRS, 2019 WL 1427552, at *2 (W.D. Ky. Mar. 29, 2019) (dismissing plaintiff/wife's section 1983 claim based on alleged violations of her husband's constitutional rights which caused him to be "taken away" from her for 11 days because "the Sixth Circuit has held that § 1983 does not provide a plaintiff a remedy for deprivation of the 'right to familial relationships'").

15

In their Response brief, Plaintiffs do not attempt to distinguish the majority opinion in *LeFever*, or any of the other Sixth Circuit cases cited by Defendants. They instead contend, erroneously, that the concurring and dissenting opinion by Circuit Judge Helene White supports their claim, discussed *infra* at pp. 21-22, and ask the Court to follow a 1987 decision by the Ninth Circuit Court of Appeals, *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999), which allowed the children of a parent killed by the police to pursue claims for losses of familial companionship and society. (Pls.' Resp. at pp. 7-8, 11 PageID.156-57, 160.) The plaintiff in *LeFever* made a similar request, "implor[ing]" the court to follow *Smith*. *LeFever*, 645 F. App'x at 447-48. The Sixth Circuit unanimously rejected that request, recognizing that "*Smith* is at odds with our precedents." *Id.* at 447; *see also Purnell*, 925 F.2d at 948 n.6 (juxtaposing the Ninth Circuit's holding in *Smith* with the Sixth Circuit's conclusion that "section 1983 provides a cause of action which is *personal* to the injured party").[3] As the United States Supreme Court has explained,

---

[3] In reaching its conclusion, the *Smith* court relied in part on a Seventh Circuit case, *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which also involved a fatal shooting by police. *Smith*, 818 F.2d at 1420. However, the Seventh Circuit Court of Appeals has since overruled *Bell* in *Russ v. Watts*, 414 F.3d 783, 787 (7th Cir. 2005), where it noted that "[m]ost courts that have considered the issue have expressly

"[h]istorically, the guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (collecting cases). The Sixth Circuit in *LeFever* stated that "we have repeatedly found that § 1983 provides no relief for injuries collateral to the violation of another person's constitutional right," and "[b]ecause Alex alleges that the defendants violated his right to familial integrity by trampling *his mother's* constitutional rights leading to her wrongful conviction, he raises a non-

---

declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship."

Other Circuit Courts of Appeal have similarly declined to follow *Smith* and have refused to find a plausible familial-relationship claim under section 1983 unless there is an allegation that the state action was intentionally directed at the familial relationship. *See, e.g, Partridge v. City of Benton, Arkansas*, 929 F.3d 562, 568-69 (8th Cir. 2019) (holding that because plaintiffs did not allege that the police officer's shooting of the decedent was directed at plaintiffs' relationship with the decedent, their section 1983 claims were foreclosed); *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47-48 (2d Cir. 2018) ("join[ing] the consensus view of the circuit courts" that "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship"); *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (where officer shot and killed individual after he refused demands to hold up his hands, father could not recover for deprivation of his relationship with his son because the official action was not "directed at the parent-child relationship"). *See also Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985) (holding, in a case decided before *Smith*, that plaintiffs' section 1983 action for the wrongful death of their son and brother while he was in state custody was properly dismissed because plaintiffs did not allege that defendants intended to deprive them of their protected relationship with the decedent).

17

cognizable claim for a collateral injury." *LeFever*, 645 F. App'x at 448 (emphasis in original).

The Court similarly finds in this case that because Plaintiffs here allege that Defendants violated their right to familial integrity by violating their father's constitutional rights, leading to his wrongful conviction, they raise a non-cognizable claim for a collateral injury, and their section 1983 claim in Count I of their Complaint is dismissed with prejudice against both Defendants. Defendants' purported unconstitutional actions were alleged to be directed to Burton only and not directed at the relationship between Burton and Plaintiffs.

## B.     Alternatively, Defendant Sanders is Entitled to Qualified Immunity

Defendants argue that, even if Plaintiffs could state a cognizable section 1983 claim against them in this case, Defendant Sanders would be entitled to qualified immunity to the extent he is sued in his individual capacity. (Defs.' Mot. at pp. 8-11, PageID.123-26.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officers are entitled to qualified immunity under section 1983

18

unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. 658, 664 (2012). "Clearly established" means that, *at the time of the officer's conduct*, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

The "clearly established" standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). This requires a high "degree of specificity." *Mullenix v. Luna,* 577 U.S. 7, 13 (2015) (per curiam). Courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (citation omitted); *see also Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) ("This inquiry 'must be

undertaken in light of the specific context of the case, not as a broad general proposition.'") (citation omitted).

Once the qualified immunity defense is raised, "[i]t is a *plaintiff's burden* to show that the right at issue was clearly established." *Jackson v. City of Cleveland*, 925 F.3d 793, 822 (6th Cir. 2019) (emphasis added), *cert. denied,* 140 S. Ct. 855 (2020). While the plaintiff need not cite "'a case directly on point' [to demonstrate] that the law is clearly established, … 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)). The law is clearly established when the plaintiff can point either to "cases of controlling authority in his jurisdiction *at the time of the incident*," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne,* 526 U.S. 603, 617 (1999) (emphasis added); *see also Wesby*, 138 S. Ct. at 590; *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 694 (6th Cir. 2022) (explaining that because "[t]he point is to give the official 'fair notice' that his actions violated the plaintiff's rights," the court "look[s] to the law at the time the official acted") (citations omitted).

Defendants argue that not only is there no clearly established right to familial association under section 1983 in the context of this case, as discussed above, but

20

there is a case directly on point that negates Plaintiffs' allegations for redress against Defendant Sanders. (Defs.' Mot. at pp. 10-11, PageID.125-26 (citing *LeFever*, 645 F. App'x at 448).) As discussed above, the Sixth Circuit Court of Appeals held in *LeFever*, under very similar allegations, that the plaintiff/son's claim for violation of *his* right to familial integrity "raises a noncognizable claim for a collateral injury" and "we have repeatedly found that § 1983 provides no relief for injuries collateral to the violation of another person's constitutional right." *LeFever*, 645 F. App'x at 447-48.

The Court finds that Plaintiffs have failed to meet their burden to show that their alleged collateral due process claim against Sanders was clearly established in 1987. Plaintiffs only cite to case law recognizing a right to family integrity in cases involving child protective services, and thus cases involving state action intentionally directed at the familial relationship. (See Pls.' Resp. at pp. 13-15, PageID.162-64.) Plaintiffs have failed to cite to any Sixth Circuit case, much less a "robust consensus of authority," clearly establishing that Defendant Sanders' alleged conduct in the context of this case constituted a violation of the substantive due process rights of Burton's children. In fact, Circuit Judge Helene White's opinion, concurring in part and dissenting in part in *LeFever*, acknowledged that she would find "that the individual defendants are entitled to qualified immunity [on the son's

familial integrity claim based on his mother's incarceration] because the right to family integrity in this context was not clearly established in 1990." *LeFever*, 645 F. App'x at 452 (White, J. concurring in part and dissenting in part). Circuit Judge White contrasted the cases relied upon by the plaintiff in that case as addressing "state regulation of families" where "the state purposefully separated a child from a parent by interfering with a custodial relationship," with the case before her in which "Alex's separation from his mother was incidental to her incarceration, and the cases did not clearly establish that wrongful incarceration was an unconstitutional interference with a parent-child relationship at the time of LeFever's conviction" in 1990. *Id.*; *see also Kellom*, 2018 WL 4111906, at *15 (holding that officers were entitled to qualified immunity on "an alleged constitutional violation of the right to familial association arising from the killing of a child by a state or federal officer" "because given the lack of case law on the issue, the alleged right was not 'clearly established' on the date of the incident").

Accordingly, the Court finds that Defendant Sanders is entitled to qualified immunity on Plaintiffs' section 1983 due process claim in Count I of their Complaint.

22

C.     **Also Alternatively, Plaintiffs' Official Capacity Claim Against Sanders and Their *Monell* Claim Against the City are Dismissed**

Defendants contend that Plaintiffs' claim against Defendant Sanders in his official capacity should be dismissed because it is duplicative of their claim against the City (Defs.' Mot. at pp. 11-12, PageID.126-27), and that Plaintiffs' claims against the City are barred and discharged by the City's Chapter 9 bankruptcy. (*Id.* at pp. 12-13, PageID.127-28.) Plaintiffs argue in response that Sanders is not entitled to automatic dismissal of the official capacity claim against him, and that Detroit's bankruptcy does not provide immunity from Plaintiffs' claims because Plaintiffs "had no way of knowing whether they had a claim for unconstitutional deprivation of the family unit against the city until their father was officially exonerated." (Pls.' Resp. at pp. 16-19, PageID.165-68.)

1.     **Plaintiffs' official capacity claim against Defendant Sanders**

Defendants correctly note that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Courts within the Sixth Circuit consistently affirm the dismissal of official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself. *See, e.g., Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty.*

23

*Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ("We will [ ] affirm the dismissal of the official capacity claims against [three municipal officials] because a suit against an official of the state is treated as a suit against the municipality.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); *Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848-49 (E.D. Mich. 2014) ("[B]ecause Cavanaugh has raised claims against Otsego County, the claims against [the county's sheriff and undersheriff] in their official capacities are duplicative and will be dismissed."), *aff'd* (6th Cir. 14-1155, Dec. 12, 2014); *Swartz Ambulance Serv., Inc. v. Genesee Cnty.*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009) ("[C]laims brought against Genesee Board of Commissioners and individual Commissioners pursuant to 42 U.S.C. § 1983 are duplicative of the claim against Genesee County because official capacity suits are the equivalent of a suit against the municipality. Accordingly, the Court dismisses the Board and individual Commissioners from those claims under 42 U.S.C. § 1983.") (internal citation omitted) (citing *Matthews*, 35 F.3d at 1049); *see also Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541-42 (W.D. Mich. 2020) (finding that "dismissal of official-capacity claims is permitted and judicious when the reasonable entity is also named as a defendant in the case.") (citation omitted).

24

Plaintiffs argue that the Sixth Circuit has stated that early dismissal of official capacity claims is neither required nor favored. (Pls.' Resp. at pp. 16-17, PageID.165-66, citing *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 635 (6th Cir. 2012).) However, despite voicing its reservations to early dismissal of official-capacity claims in *Baar*, the Sixth Circuit has more recently upheld the dismissal of governmental agents in their official capacity, so long as the governmental entity is also sued, holding that in such cases, the naming of both is superfluous. *See Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 328 (6th Cir. 2013) ("Plaintiffs' claims against Bedell in his official capacity were properly dismissed because they were in actuality claims against the Township of Waterford, which is itself a defendant."); *see also Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2016) ("Where the entity is named a defendant, an official-capacity claim is redundant.").

The Court dismisses Plaintiffs' section 1983 claim against Defendant Sanders in his official capacity because it is duplicative of Plaintiffs' claim against the City. Defendant Sanders was an employee of the City, and the City has clearly received notice of this suit since it is also a named party. Further, for the reasons explained below, Plaintiffs' section 1983 *Monell* claim against the City will be dismissed.

### 2.      Plaintiffs' *Monell* claim against the City

Plaintiffs assert a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the City's alleged policies, practices, and customs, including a failure to provide adequate training to its police officers, that violated Danny Burton's rights. (Compl. ¶¶ 64-70.) *Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation. *Monell*, 436 U.S. at 694-95. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). The "conclusion that no officer-defendant has deprived the plaintiff of any constitutional right *a fortiori* defeats a claim against the government entity as well." *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799) (cleaned up)). As the United States Supreme Court explained in *Heller*, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of [the unconstitutional action] is quite beside the point." *Heller*, 475 U.S. at 799.

Accordingly, because Plaintiffs cannot establish individual liability against Defendant Sanders for their § 1983 claim for the reasons set forth above, Plaintiffs' § 1983 *Monell* claim against the City is dismissed.

> **D.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Intentional Infliction of Emotional Distress Claim Against Defendant Sanders**

This action is in federal court based upon federal-question jurisdiction over Plaintiffs' section 1983 claim in Count I of their Complaint. Plaintiffs ask the Court to exercise supplemental jurisdiction over their pendant state law intentional infliction of emotional distress claim, asserted against Defendant Sanders only.[4]

Supplemental jurisdiction is a "doctrine of discretion." *City of Chicago Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "[D]istrict courts can decline to exercise supplemental jurisdiction over pendant claims for a number of valid reasons." *City of Chicago*, *supra*.

The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that district courts may decline to exercise supplemental jurisdiction over a claim when: 1) the

---

[4] Although Plaintiffs' Complaint does not specify against which defendant(s) the intentional infliction of emotional distress claim is asserted, Plaintiffs affirmatively state in their Response brief that this claim is brought against Defendant Sanders only. (Pls.' Resp. at p. 19, PageID.168.)

27

claim raises a novel or complex issue of state law; 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; 3) the district court has dismissed all claims over which it has original jurisdiction, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

A district court's decision as to whether to exercise supplemental jurisdiction over a plaintiff's state-law claims is reviewed for abuse of discretion. *Soliday v. Miami Cnty., Ohio*, 55 F.3d 1158, 1164 (6th Cir. 1995).

Here, Plaintiffs' section 1983 count asserted against both Defendants in Count I is the sole basis for this Court's jurisdiction. As set forth above, this Court is dismissing that claim against Defendants Sanders and the City of Detroit with prejudice for failure to state a claim. Thus, this Court is dismissing the only claim over which it has original jurisdiction. The Court exercises its discretion and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law intentional infliction of emotional distress claim asserted against Defendant Sanders.

## IV. CONCLUSION

For all of the reasons set forth above, the Court **GRANTS** Defendants Ronald Sanders and the City of Detroit's joint motion to dismiss Plaintiffs' section 1983

claim against them in Count I (ECF No. 21), and that claim is **DISMISSED WITH PREJUDICE.**

The Court further **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over Plaintiffs' remaining state law intentional infliction of emotional distress claim in Count II, and that claim is **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

Dated: April 18, 2022                      s/Paul D. Borman
                                           Paul D. Borman
                                           United States District Judge

29